[Cite as *State v. Stewart*, 2023-Ohio-253.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  9-21-36

    v.

KEISONN STEWART,                   **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No.  2021 CR 116

**Judgment Affirmed**

Date of Decision:  January 30, 2023

APPEARANCES:

    *Thomas A. Gjostein* **for Appellant**

    *Jocelyn Stefancin* **for Appellee**

**MILLER, P.J.**

{¶1} Defendant-appellant, Keisonn Stewart, appeals the October 29, 2021 judgment of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On September 5, 2020, while conducting a personal search of Stewart, an inmate at North Central Correctional Institution ("NCCI"), corrections officers located several pieces of a paper, which the corrections officers suspected to be a synthetic cannabinoid (also known as "K2" or "synthetic marijuana"). Thereafter, corrections officers searched Stewart's living quarters and located buprenorphine on Stewart's television stand.

{¶3} On March 17, 2021, the Marion County Grand Jury indicted Stewart on two fifth-degree felony counts of possession of drugs in violation of R.C. 2925.11(A), (C)(1) and R.C. 2925.11(A), (C)(2), respectively. Stewart appeared for arraignment on May 24, 2021, and entered a plea of not guilty.

{¶4} A superseding indictment was filed on June 30, 2021 which indicted Stewart on two counts: Count One of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1), a fifth-degree felony, and Count Two of possession of drugs in violation of R.C. 2925.11, a first-degree misdemeanor.[1] Count One relates

---

[1] The superseding indictment states that Count Two is a fifth-degree felony. (Doc. No. 18). However, prior to the commencement of the trial, the State acknowledged that language relating to Stewart's prior convictions was inadvertently omitted from the superseding indictment resulting in the charge outlined in Count Two being a first-degree misdemeanor rather than a fifth-degree felony. (Oct. 15, 2021 Tr. at 3-4).

to the synthetic marijuana found in Stewart's sock, and Count Two relates to the buprenorphine found on Stewart's television stand. On July 14, 2021, Stewart appeared for arraignment and entered not guilty pleas to the counts in the superseding indictment.

{¶5} A jury trial was held on October 14-15, 2021. At the conclusion of the trial, the jury found Stewart guilty of Count One and not guilty of Count Two.

{¶6} On October 29, 2021, Stewart was sentenced to 11 months in prison. That same day, the trial court filed the judgment entry of sentence.

{¶7} Stewart filed a notice of appeal on November 3, 2021. He raises one assignment of error for our review.

### Assignment of Error

**Appellant's conviction was not supported by the sufficiency of the evidence in violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution and Article I Sections 1 and 16 of the Ohio Constitution and the conviction was also against the manifest weight of the evidence.**

{¶8} In his assignment of error, Stewart combines arguments that his aggravated-possession-of-drugs conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

{¶9} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

**{¶10}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

**{¶11}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing

court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶12} We first review the sufficiency of the evidence supporting Stewart's conviction. Stewart was found guilty of aggravated possession of drugs in violation of R.C. 2925.11(A). Possession of drugs under R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through which ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998). Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will

probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶13} At the trial, NCCI Corrections Officer Kurtis Barnette testified that on September 5, 2020, he was instructed by his shift captain to search Stewart and Stewart's property. (Oct. 15, 2021 Tr. at 31-32). Officer Barnette located Stewart, an inmate at the facility, and performed a personal search of his person. (*Id.* at 33-34, 46). During the search, Officer Barnette located what he suspected was synthetic marijuana in the left sock that Stewart was wearing. (*Id.* at 33-34). Stewart described the suspected synthetic marijuana as resembling one-inch by one-inch squares of white paper. (*Id.* at 33, 36). Officer Barnette could not recall precisely how many strips of suspected synthetic marijuana he found in Stewart's left sock, but stated that there were multiple strips. (*Id.* at 37).

{¶14} When Officer Barnette located the suspected synthetic marijuana, he put the evidence inside a clear glove and placed the glove in his pocket to ensure that it was not misplaced. (*Id.* at 38). Officer Barnette also performed a search of Stewart's bunk area.[2] (*Id.* at 34-36). Then, after completing several duties, such as

---

[2] During the search of Stewart's bunk area, Officer Barnette located a strip of buprenorphine on a television stand near Stewart's bed. (Oct. 15, 2021 Tr. at 34-36). Although this buprenorphine formed the basis for Count Two in the superseding indictment, the jury ultimately found Stewart not guilty of that count. (Doc. Nos. 41, 46). The testimony and evidence relating to Count Two is not relevant to this appeal and will not be further discussed.

assisting with the inmate count, Officer Barnette delivered the suspected contraband to his supervising shift officer. (*Id.* at 38, 44-45).

**{¶15}** Next, Trooper Dorothy Gladden, the State's Investigator assigned to NCCI, stated that she reviewed the information she received from her internal investigators regarding the contraband seized in relation to Stewart. (Oct. 14, 2021 Tr. at 55-56). Then, she took photographs of the evidence, sealed the evidence with her initials, and placed it in the internal drop box at the Marion Highway Patrol Post to be sent for testing at the Ohio State Highway Patrol Crime Lab. (*Id.* at 56-57). Trooper Gladden identified Defendant's Exhibit 1 as a series of photographs that she took of the items that she sent to the Ohio State Highway Patrol Crime Lab for testing. (*Id.*); (Defendant's Ex. 1).

**{¶16}** Trooper Gladden stated that, as part of her investigations, she gives the subject of a criminal investigation the opportunity to make a statement to her "on record." (Oct. 15, 2021 Tr. at 53). According to Trooper Gladden, Stewart declined her offer to comment on the incident. (*Id.* at 53-54).

**{¶17}** Sarah Kestler, a criminalist for the Ohio State Highway Patrol Crime Lab, testified that she performed testing on the suspected synthetic marijuana. (*Id.* at 71). Through her analysis, she determined the one-inch by one-inch squares of paper contained MDMB-4en-PINACA, a synthetic cannabinoid. (*Id.* at 76-79); (State's Ex. 3).

{¶18} In support of his position that his conviction is not supported by sufficient evidence, Stewart makes a vague argument that there was "scant evidence to connect [him] to the offense of possession." (Appellant's Brief at 5). In essence, Stewart offers no factual or legal support for his assertion that his conviction is based upon insufficient evidence.[3] "It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignment[s] of error." *State v. Gillespie*, 3d Dist. Paulding No. 11-16-07, 2017-Ohio-6936, ¶ 56. Moreover, after reviewing the evidence in a light most favorable to the State, we have little difficulty determining that a rational trier of fact could have found that the State established that Stewart possessed the synthetic marijuana found in his left sock. *See State v. Williams*, 10th Dist. Franklin No. 09AP-1152, 2010-Ohio-3383, ¶ 12-15; *State v. Brown*, 4th Dist. Gallia No. 04CA3, 2004-Ohio-5887, ¶ 11-13.

{¶19} Stewart's argument that his conviction is against the manifest weight of the evidence is predicated upon Officer Barnette's testimony that he could not conclusively state that Defendant's Exhibit 1 depicted the items he confiscated from Stewart's sock.

{¶20} Indeed, on cross-examination, Stewart's trial counsel presented Officer Barnette with Defendant's Exhibit 1 and asked him if the photographs

---

[3] We note that Stewart does attempt to argue that Officer Barnette's inability to identify Defendant's Exhibit 1 relates to the sufficiency of the evidence. However, Stewart's argument actually relates to the weight of the evidence rather than the sufficiency of the evidence and, accordingly, is addressed in our discussion of the weight of the evidence.

accurately depict what he found in Stewart's sock on September 5, 2020. (Oct. 15, 2021 Tr. at 45). In response, Officer Barnette stated, "I can't remember." (*Id.*). However, Trooper Gladden, not Officer Barnette, took the photographs in Defendant's Exhibit 1. Trooper Gladden testified to the chain of custody of the contraband and identified Defendant's Exhibit 1 as a photograph of the suspected contraband relating to her investigation of Stewart.

**{¶21}** Although Stewart argues that Officer Barnette's inability to identify Defendant's Exhibit 1 weighs against his credibility, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Furthermore, it is possible that Officer Barnette's admission actually bolstered his credibility to the jury by demonstrating that he would not speculate or testify to facts outside the scope of his knowledge. "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Accordingly, after reviewing the record, we do not find that Stewart's conviction is against the manifest weight of the evidence.

**{¶22}** Stewart's assignment of error is overruled.

{¶23} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

***Judgment Affirmed***

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**