JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Charles Nelson (Nelson), appeals his convictions for felonious assault and intimidation. After reviewing the parties' arguments and pertinent case law, we affirm.
 {¶ 2} On August 29, 2007, a Cuyahoga County Grand Jury indicted Nelson with the following: one count of aggravated burglary, one count of kidnapping, two counts of felonious assault, and one count of intimidation. All counts except intimidation included notice of prior conviction and repeat violent offender specifications.
 {¶ 3} The facts giving rise to the instant case arose between Nelson and Betty Browner (Browner) on Sunday, July 29, 2007. As a preliminary matter, however, the following facts regarding the relationship between Nelson and Browner were established at trial. Nelson and Browner dated in high school but lost touch along the years. They reunited in January 2007 and began dating in February 2007. The relationship went well until April 2007, when Nelson began physically abusing Browner.
 {¶ 4} In April 2007, Browner filed assault charges against Nelson in Cleveland Heights Municipal Court. Browner also filed for a temporary protection order, which was granted.
 {¶ 5} Despite the temporary protection order Nelson and Browner remained in contact. The substance of most of their conversations consisted of *Page 4 
Nelson trying to convince Browner to drop the charges against him. Browner was afraid of Nelson and, as such, continued to accept his phone calls and visits. Browner, under duress, went with Nelson to his attorney's office and signed an affidavit recanting her grounds for the temporary protection order. The temporary protection order was never, in fact, lifted.
 {¶ 6} On the evening of Friday, July 27, 2007, Nelson and Browner went to the home of Nelson's sister, Brenda Locke (Locke) to help her clean in preparation for a yard sale. Nelson and Browner argued in Locke's basement. When they came upstairs, Browner looked weary like she had been crying. Locke asked Nelson if he had hit Browner. At the end of the evening, Nelson slept at Browner's home.
 {¶ 7} On Saturday, July 28, 2007, Nelson and Browner returned to Locke's house to finish cleaning. At the end of the evening, Nelson again asked Browner if she would drop the charges against him. Browner said she wanted to sleep on it, and Browner and Nelson went to their respective homes for the evening.
 {¶ 8} On Sunday, July 29, 2007, the day at issue in the case sub judice, Browner awakened at approximately 11:00 a.m. when she heard something hit her bedroom window. Nelson was outside and wanted to talk about dropping the assault charges. Out of fear that he would damage property if she refused, Browner, dressed only in a t-shirt, allowed him inside. *Page 5 
 {¶ 9} Nelson and Browner got into an argument in Browner's bedroom. Browner went to the kitchen for a sandwich and went back upstairs. Nelson knocked the sandwich out of Browner's hand and threw it against the wall. Nelson then grabbed a bottle of vodka and threatened to hit Browner with it. Browner ran to the dresser and grabbed her wallet, keys, and driver's license in case she needed to run.
 {¶ 10} Browner then went downstairs and sat on the couch. Nelson continued to threaten her and grabbed her lips, twisting them. Browner kicked him and eventually grabbed a knife that was nearby, ran out of the front door, down the porch steps, and into the front yard.
 {¶ 11} Nelson caught up with Browner and each time he tried to punch her, she swung her knife at him in defense. However, the knife broke, at which point, Nelson hit Browner so hard that she collapsed to the ground and urinated on herself. Nelson continued to punch and kick her while she lay on the ground.
 {¶ 12} When Nelson stopped kicking Browner, she pulled herself up using a nearby fence for assistance. Browner thought Nelson had left. However, when Browner looked up, Nelson drove his silver Ford Taurus over the sidewalk and towards her. Browner dove to get out of the way and escaped being struck by Nelson's car by just a few inches.
 {¶ 13} Browner then ran towards another house and hid for approximately twenty minutes. Thereafter, Browner, believing that Nelson had left, returned *Page 6 
to her home. Nelson punched her again and then ran away when he heard sirens. Browner took the opportunity to run inside of her house, lock the door, and call 911.
 {¶ 14} When the police arrived, Nelson had already left. An ambulance took Browner to MetroHealth Hospital for treatment. Browner's eyes were swollen shut, her hand was broken, she sustained bruises and lacerations, and required stitches and a neck brace. Browner continues to suffer from pain and also suffers from depression as a result of the attack.
 {¶ 15} On November 13, 2007, the case proceeded to a jury trial, except for the notice of prior conviction and repeat violent offender specifications, which were tried to the bench. Nelson motioned for acquittal pursuant to Crim. R. 29. The trial court granted Nelson's motion in part and dismissed the charges for aggravated burglary, kidnapping, and all specifications.
 {¶ 16} On November 14, 2007, the jury returned the following verdict: guilty of both counts of felonious assault and guilty of intimidation. Also on November 14, 2006, the trial court sentenced Nelson to four years of imprisonment as follows: two years for each count of felonious assault, to be served concurrently; and two years for intimidation, to be served consecutively.
 {¶ 17} Nelson appeals, asserting two assignments of error for our review.
 {¶ 18} ASSIGNMENT OF ERROR NUMBER ONE *Page 7 
 "The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction."
 {¶ 19} Nelson argues that the trial court erred when it failed to grant his Crim. R. 29 motion as to both counts for felonious assault and for intimidation of a victim.
 {¶ 20} Crim. R. 29(A), which governs motions for acquittal, states:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 21} Furthermore, in reviewing the sufficiency of the evidence, we held:
 "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The motion `should be granted only where reasonable minds could not fail to find reasonable doubt.'" State v. McDuffie, Cuyahoga App. No. 88662, 2007-Ohio-3421. (Internal citations omitted.)
 {¶ 22} The first count for felonious assault is set forth in R.C. 2903.11(A)(1), which reads: "No person shall knowingly * * * Cause serious physical harm to another * * *."
 "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably *Page 8 
be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B)." State v. Miller (2002), 96 Ohio St.3d 384.
 {¶ 23} R.C. 2901.01(A)(5)(c) defines serious physical harm as: "Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity * * *."
 {¶ 24} Thus, in applying the law to the facts of this case, Nelson caused serious physical harm to Browner when he physically beat her on July 29, 2007. Nelson punched Browner with such force as to cause Browner to collapse to the ground and urinate on herself. Nelson continued to kick and punch Browner to such an extent that she had trouble standing up. Browner's eyes remained swollen shut for a couple of days. Browner sustained a broken hand, bruises, lacerations, and was forced to wear a neck brace while she recovered. Browner takes pain medications and anti-depressants as a result of the events on July 29, 2007. Therefore, Browner suffered serious physical harm.
 {¶ 25} Nelson acted knowingly because he was aware that his conduct would cause serious physical harm to Browner. Nelson clearly had a physical advantage over Browner based upon the injuries that she sustained. Nelson managed to walk away unscathed before the police arrived.
 {¶ 26} The second count for felonious assault is set forth in R.C. 2903.11(A)(2) and reads, in part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or *Page 9 
dangerous ordnance." Here, Nelson attempted to cause physical harm to Browner by means of a deadly ordnance when he drove his Ford Taurus over the curb, over the tree law, over the sidewalk and directly towards Browner who was having trouble even standing up. Nelson missed hitting Browner by less than twelve inches only because Browner managed to crawl away slightly. Nelson acted knowingly because he was aware that attempting to strike Browner with an automobile would cause physical harm to her.
 {¶ 27} R.C. 2921.04(B) sets forth the crime of intimidation of a victim of a crime
 {¶ 28} as charged:
 "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 29} Here, Nelson repeatedly asked Browner to drop the assault charges against him. Browner testified that Nelson threatened her with physical harm if she did not drop the assault charges or the temporary protection order against him. (Tr. 125-26.) Further, on July 29, 2007, Nelson resorted to the use of force to intimidate Browner against any further prosecution against him for assault. Nelson did so by committing two counts of felonious assault against Browner.
 {¶ 30} Thus, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential *Page 10 
elements of felonious assault and intimidation beyond a reasonable doubt. As such, the trial court did not err when it denied Nelson's Crim. R. 29 motion for acquittal as to both counts of felonious assault and for intimidation.
 {¶ 31} Nelson's first assignment of error is overruled.
 {¶ 32} ASSIGNMENT OF ERROR NUMBER TWO
"Appellant's conviction is against the manifest weight of the evidence."
 {¶ 33} Nelson argues that the verdict is against the manifest weight of the evidence.
 {¶ 34} The Ohio Supreme Court set forth the following standard for evaluating a claim that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 35} We have held that, compared to the sufficiency of the evidence:
 "A challenge to the manifest weight of the evidence, on the other hand, attacks the credibility of the evidence presented. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence." State v. Ortiz, Cuyahoga App. No. 89952, 2008-Ohio-4120. (Internal citations omitted.) *Page 11 
 {¶ 36} In reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of witnesses and in resolving conflicts in the evidence, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice warranting reversal.
 {¶ 37} Browner's testimony was consistent with that of her neighbor, Terri Doublin (Doublin), that Nelson beat Browner severely in the front yard of Browner's home on July 29, 2007. Both Browner and Doublin also testified that Nelson attempted to cause serious physical harm to Browner with his Ford Taurus when he drove it onto the yard towards Browner, missing her by only a few inches.
 {¶ 38} Further, Nelson used force to intimidate Browner to drop the assault charges against him as evidenced by his acts against Browner on July 29, 2007, outside of her home.
 {¶ 39} Thus, the verdict is not against the manifest weight of the evidence in this case.
 {¶ 40} Nelson's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
 *Page 1